IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SHAMAYN & MICHAEL KENNEDY | ) | |
| as next friends of their child | ) | |
| | ) | |
| v. | ) | 7-06-CV-124-AH |
| | ) | |
| WICHITA COUNTY HERITAGE | ) | |
| SOCIETY | ) | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the consents of the parties and the District Court's order filed on November 29, 2007, the above styled and numbered case was transferred to the magistrate judge in accordance with the provisions of 28 U.S.C. § 636(c).

On June 9, 2008, the case was tried before the court without a jury and having heard and considered the testimony and exhibits presented and the facts stipulated by the parties in the pretrial order filed in the case, the court issues its memorandum opinion setting out its findings of fact and conclusions of law in compliance with Rule 52(a), Federal Rules of Civil Procedure.

Wichita County Heritage Society (sometimes referred to hereinafter as "Defendant" or the "Society") is a non-profit entity which owns, operates and maintains several properties in the Wichita Falls, Texas area, including the Kell House, which formerly was a private residence, but which at all times relevant to this action was an historical structure listed on the National Register of Historical Places, was designated as a Recorded Texas Historical Landmark, and had been chosen as a local landmark by the City of Wichita Falls.

The Society provides various services and programs to the general public at the Kell House. The Kell House is a "public accommodation" as that term is defined in the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181 (7)(H).

Kaelei Kennedy is the ten year old daughter of the Plaintiffs. She suffers from mitochondrial myopathy, a medical condition which involves metabolic, immunity and muscle impairments. These impairments result in severe restrictions on her life activities including walking. As a result of which from a very early age Kaelei has been dependent on a motorized wheelchair. She is a qualified individual with a disability within the meaning of the ADA.

For the 2004 holiday season the Kell House Museum created a "Santa House." An advertisement in the *Times Record News* provided a description of the event and hours. Exhibit 2.[1] Shamayn Kennedy, Kaelei's mother saw the newspaper ad. Kaelei's medical condition frequently caused her to be unable to leave her home, but because she felt well enough, Mrs. Kennedy called the Kell House on December 2, 2004, to see if it was wheelchair accessible. On this occasion she spoke to Stacie Flood, employed by the Society as its curator. Ms. Flood advised that the Kell House was not wheelchair accessible. In the absence of Jennifer Fashimpar, who was identified as Defendant's executive director, Mrs. Kennedy sought to speak to Howard Morris, Defendant's president.

On December 2 or 3, 2004, Mrs. Kennedy called Howard Morris. Morris told her that as a designated historical building the Kell House was exempt from compliance with the ADA. Mrs. Kennedy expressed her disagreement with Morris's interpretation and told him that she intended to file a complaint with the United States Department of Justice.

Mrs. Kennedy then proceeded to contact the *Times Record* which resulted in an article printed on December 4, 2004, which contained quotes attributed to both her and Mr. Morris. *See* Exhibit 3. The article, seen by the mayor of Electra, Texas, resulted in a visit from Santa Claus to

---

[1]Unless otherwise noted the exhibits refer to Plaintiffs' exhibit designations.

Kaelei at her home which resulted in a further newspaper article which contained additional quotes attributed to Mrs. Kennedy and to Morris. *See* Exhibit 4. In between the dates of the newspaper articles, the two spoke and Morris advised that an unidentified person had offered to pay for the installation of a portable wheelchair ramp, but that the Society would first have to consult its architects.

The 2004 Santa Claus House concluded without any steps being taken to make the Kell House wheelchair accessible. Nonetheless Shamayn Kennedy persisted in her efforts to get the Society to make the Kell House ADA compliant. She asked Jennifer Fashimpar in mid-January 2005 to call her back, but she was never contacted by Ms. Fashimpar.

In mid-March 2005, Stacie Flood attended a conference which dealt with ADA issues as they related to historical sites. Upon her return she informed some members of Defendant's board that the Kell House was not exempt from the requirements of the ADA and shared with these individuals handouts she had gotten at the conference. *See* Exhibits 15, 17 and 18. In May 2005 Mrs. Kennedy spoke with Ms. Flood seeking information about the status of a wheelchair ramp. Stacie Flood told her nothing had occurred, but that possibly a grant application had been made. Mrs. Kennedy asked that Ms. Fashimpar call her with a status report. Ms. Fashimpar did not respond, and Mrs. Kennedy called again in September 2005 at which time she was informed that nothing had been done to install a ramp. In this conversation Ms. Fashimpar told her that the Board had adopted a policy banning wheelchairs because they were too heavy. A similar statement was made to her by Howard Morris in the course of a chance meeting which occurred in late November 2005.

The evidence establishes a studied indifference on the part of Defendant's board and executive board to the requirements of the ADA and to the Act's application to operations of the

Kell House. Mrs. Kennedy's inquiries were largely ignored. Although Defendant intended to and did repeat the Santa Claus House in 2005, *See* Exhibit 5, the ADA was rarely discussed and certainly was not pursued, as reflected in the 2005 minutes. *See* Defendant's Exhibits 13, 16, 23 and 25. As related in Stacie Flood's testimony, Defendant's ADA obligations were not pursued because building a wheelchair ramp would open up a Pandora's Box.

In 2005 Defendant replaced rotted boards on the front porch of the Kell House. *See* testimony of Stacie Flood and Defendant's Exhibits 14 and 16. These repairs do not constitute alterations as that term is used in the ADA. *See* 28 C.F.R. § 36.402(b)(1). As distinguished from the obligations imposed with respect to architectural barriers located at "public accommodations" newly constructed and first occupied after January 25, 1993, or which underwent alterations after that date, *See* 42 U.S.C. § 12183 (a)(1) and (2), those imposed on premises occupied prior to that date are less demanding, evidencing a Congressional intent to "protect existing businesses from undue hardship." *See Pinnock v. International House of Pancakes Franchiseee,* 844 F. Supp. 574, 588 (S.D. Cal. 1993). For those facilities occupied prior to January 25, 1993, the ADA states that discrimination includes a private entity's "failure to remove architectural barriers ... where such removal is readily achievable." § 12182 (b)(2)(A)(iv)

The parties have stipulated that at all relevant times architectural barriers existed at the Kell House and that it had no ramps at the entrances that allowed wheelchairs to enter. § 12181 (9)(A) through (D) sets out facts to be considered in determining whether architectural barriers can be removed "without much difficulty or expense," or in other words that barrier removal is "readily achievable."

In the context of an architectural barrier claim, a plaintiff has the initial burden of introducing

4

evidence showing that removal of the barrier is "readily achievable." *See e.g. Gathright-Dietrich v. Atlanta Landmarks, Inc.,* 452 F.3d 1269, 1273-74 (11th Cir. 2006) and *Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership I,* 264 F.3d 999, 1007 (10th Cir. 2001).[2]

In addressing these factors Plaintiffs presented the testimony of Tere O'Connell, a licensed architect and principal in the Austin, Texas firm of Volz & Associates and of Tim Hald, a certified public accountant.

Ms. O'Connell was previously employed by the Texas Historical Commission where her positions included projects review and the agency-wide ADA coordinator, project director of the Texas Courthouse Alliance and assistant director of the commission's division of architecture. She has had extensive experience in restoration and rehabilitation of historical structures throughout the State of Texas, including insuring that such buildings were ADA compliant. The court finds that Ms. O'Connell is a person wholly competent to render expert opinions with regard to the factors under § 12181 (9) including whether barrier removal would threaten or destroy the historic significance of the Kell House. *See also* ADA Title III DOJ Technical Assistance Manual § III-4.4200.

A permanent wheelchair ramp can be built at the rear entrance to the Kell House. There are three alternative designs for the ramp which satisfy the requirements of the ADA ranging in cost between $18,558.00 and $28,055.00. (Exhibit 10, at 19-21). An additional cost of approximately $11,000.00 would be incurred for design preparation. Approval by the Texas Historical Commission and compliance with the Texas Accessibility Standards (TAS) would be prerequisites

---

[2]*See also MacClymonds v. IMI Investments, Inc.,* 2007 WL 1306803 at *5 (April 5, 2007, S.D. of Tex.) (collecting cases).

for the construction of a permanent wheelchair ramp built to the specifications of any of the three alternatives. The construction would also require the granting of a minor variance from TAS 4.3.3 - a 1/4" variance to the 32" door opening requirement. It is reasonably probable, based upon Ms. O'Connell's knowledge and experience with variance requests, that such a request would be granted.

The ramp and its location will have no adverse affect on the historic significance of the Kell House. It is perhaps worth noting that an elevator was installed in the Kell House in the 1940s to permit easier access for Mr. Kell while the house was maintained as a private residence, all without any destruction of the house's significance as an historical pioneer home.

The Wichita County Heritage Society has three permanent employees. It has a board consisting of 10 to 20 members, a total membership of approximately 425 members - 200 of whom serve as volunteers at the Kell House. In addressing the question of whether the removal of the architectural barrier is "readily achievable" in light of the factors enumerated in § 12181 (9) (B) through (D) the primary focus is on whether the necessary action can be carried out without much difficulty or expense under the particular circumstances of the case. *See Gathright-Dietrich, supra,* 452 F.3d at 1273, quoting from *Colorado Cross, supra,* 264 F.3d at 1007.

There is no evidence suggesting that construction of any wheelchair ramp design presented by Plaintiffs would be a difficult undertaking or would disrupt the day-to-day operations of the Kell House. Therefore, the remaining issue to be addressed in determining whether its construction is "readily achievable" is the economic impact which building the ramp will have on Defendant's operations.

In addition to the monies received from membership dues, donations and fees Defendant has access to the Kell House Endowment (sometimes referred to as the Heritage Society - Kell House

Fund), a fund which was established in 2001 for the maintenance and upkeep of the Kell House. *See* Exhibit 23. The fund is administered by the Wichita Falls Area Community Foundation. Exhibit 27. The initial balance of the fund was approximately $840,000.00. Over the years the endowment fund has grown. *See e.g.* Exhibit 26, letter dated July 29, 2005; Exhibit 47, at 2; Exhibit 33, at 1 (the most recent report listing the endowment).

As related by Teresa Pontious - president of the Community Foundation - the directors of the foundation determine the spending rate of the charitable funds which the foundation administers. There is no requirement that the recipient of a fund such as the Kell House Endowment draw down sums from a fund earmarked for its benefit. Although sums can be drawn down on a cumulative basis, the foundation's directors limit disbursement to five percent (5%) of the funds in an endowment. As of the date of trial, the Kell House Endowment had a balance of $929,000.00. *See also* Defendant's Exhibit 49. Defendant's board has never requested the Community Foundation to disburse funds to install a wheelchair ramp at the Kell House.

Over time the Wichita County Heritage Society has been able to obtain substantial donations from the Wichita Falls area to benefit and underwrite its programs and to maintain its properties. Its fund raising capabilities appear to have been a primary reason that the National Development Council approached the Society to assist in fund raising for the Historic Holt Hotel project.[3]

Defendant has never attempted to solicit private donations with which to pay for the

---

[3]Although the court has not been provided with a satisfactory explanation as to why generally acceptable accounting standards permit Defendant to list a note receivable from the Historic Holt Hotel as an asset on its statement of assets, liabilities and net assets, the testimony demonstrates that the note has no economic value whatsoever.

7

construction of a wheelchair ramp at the Kell House following the 2004 holiday season.[4] Defendant has not applied for grants, such as those described by Ms. O'Connell, which are available for making historical buildings ADA compliant. As related by Howard Morris, Defendant's former board president, the costs of installing a wheelchair ramp has never been a major concern to the Society.

Based upon the foregoing facts, the court finds that Plaintiffs have proved that removal of the architectural barriers, to wit: construction of a ramp to make the Kell House wheelchair accessible is readily achievable and that Plaintiffs on behalf of their minor daughter are entitled to appropriate injunctive relief and reasonable attorneys' fees, and

IT IS, THEREFORE, ORDERED that a hearing will be held in the magistrate judge's courtroom at Dallas on **July 21, 2008, at 11:00 a.m.** to receive evidence and testimony with respect to attorneys' fees and to consider the parameters of injunctive relief to which Plaintiffs are entitled.

IT IS FURTHER ORDERED that Plaintiffs' counsel will serve copies of any documentary evidence which they intend to offer in support of their request for attorneys' fees on Defendant's counsel on or before **July 16, 2008.**

A copy of this order shall be transmitted to counsel for the parties.

SIGNED this 23rd day of June, 2008.

*[signature: Wm. F. Sanderson, Jr.]*
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4]At least one architect appears to have volunteered assistance in erecting a wheelchair ramp. Exhibit 58.